## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MICHAEL MOORE,**

      **Petitioner,**

**v.**                                              **Case No. 8:22-cv-1415-CEH-CPT**
                                              **Crim. Case No. 8:17-cr-354-CEH-CPT**

**UNITED STATES OF AMERICA,**

      **Respondent.**
_____/

## ORDER

Before the Court is Michael Moore's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 1) and memorandum in support (Doc. 2). The United States filed a response in opposition. (Doc. 18). Moore filed a reply (Doc. 20) and a supplement to his § 2255 motion (Doc. 4). Also before the Court are Moore's two identical motions to supplement further his § 2255 motion (Docs. 21, 22), to which the United States responded (Doc. 24), and Moore filed a reply (Doc. 26). Moore's motions to supplement his § 2255 motion and his § 2255 motion are due to be denied.[1]

## I.  BACKGROUND AND PROCEDURAL HISTORY

---

[1]  The motion can be denied without need for an evidentiary hearing, as no hearing is required when the record establishes that a Section 2255 claim lacks merit. *See United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984).

Moore was charged with possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Cr-Doc. 1).[2] The indictment listed Moore's prior felony convictions, including two 2008 convictions for possession of cocaine, and a 2005 conviction for sale of cocaine, all in violation of § 893.13, Florida Statutes. (*Id.* at 2). Moore was found guilty as charged after a jury trial, and this Court then adjudicated him guilty. (Cr-Docs. 76, 79).

Before sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR), in which it set Moore's base offense level at 24 under USSG §2K2.1 because he had committed the firearm offense after sustaining two felony convictions for a "controlled substance offense." (Cr-Doc. 93 at 7, ¶ 23).[3] And because he had at least three prior convictions for a "serious drug offense" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e),—his cocaine-related offenses—he was subject to an armed career criminal enhancement under USSG

---

[2]   References to filings in Moore's criminal case, Case No.: 8:17-cr-354-CEH-CPT, are cited throughout this Order as "Cr-Doc. [document number]."

[3]   For a defendant convicted of the unlawful possession of a firearm, section 2K2.1(a)(2) sets a base offense level 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." USSG §2K2.1(a)(2). Section 2K2.1 refers to the career-offender guideline in USSG §4B1.2, which defines a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." USSG §§2K2.1, cmt. (n.1), 4B1.2(b).

§4B1.4 and a minimum sentence of 15 years' imprisonment. (*Id.* ¶¶ 29, 100; *see also id.* at 30–55).[4]

Moore objected to the ACCA enhancement, asserting that the United States would not be able to produce documentation to prove the predicate offenses. (*Id.* at 27; *see also* Cr-Doc. 98 at 2, 5–8; Cr-Doc. 115 at 6–9). He also asserted that his crimes for possession of cocaine with intent to sell or deliver did not qualify as "serious drug offenses" because the offenses did not require that he receive remuneration or know the illicit nature of the controlled substance. (*Id.*). Additionally, Moore argued that he was entitled to an offense level reduction for acceptance of responsibility, despite his decision to proceed to a jury trial. (Cr-Doc. 115 at 15–21).

This Court overruled Moore's objections and found that his four prior felony convictions—sale of cocaine on November 16, 2004, sale of rock cocaine on October 11, 2005, and possession of cocaine with intent to sell or deliver on December 19, 2006 and February 18, 2006—constituted "serious drug offenses" under the ACCA and qualified him for the § 4B1.4 enhancement. (*Id.* at 14–15, 20–21). Moore's increased total offense level of 33 and his criminal history category VI resulted in a guidelines range of 235 to 293 months' imprisonment, followed by two to five years' supervised

---

[4]   Under the ACCA, a defendant convicted of a § 922(g) offense faces a 15-year minimum sentence and a maximum term of life imprisonment if he has three prior convictions for a "violent felony," a "serious drug offense," or a combination of both, "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Moore committed the predicate offenses of sale of cocaine on November 16, 2004, sale of rock cocaine on October 11, 2005, and possession of cocaine with intent to sell or deliver on December 19, 2006, and again on February 18, 2006. (Cr-Doc. 93 ¶¶ 29, 100).

release. (*Id.* at 22). After considering the section 3553(a) factors, this Court sentenced Moore to a below-guidelines sentence of 188 months' imprisonment, followed by five years' supervised release. (*Id.* at 41; *see also* Cr-Doc. 103).

On direct appeal, Moore argued that this Court "erred in denying him an acceptance-of-responsibility reduction" and "erroneously believed it lacked the authority to give a reduction," and that his prior Florida cocaine-related convictions did not qualify as "serious drug offenses" under the ACCA. *See United States v. Moore*, 814 F. App'x 465, 466 (11th Cir. 2020). The Eleventh Circuit ruled that this Court "did not clearly err in finding Moore did not meet his burden of showing he clearly accepted responsibility for his offense" and "understood its discretion in granting or denying a reduction." *Id.* at 467–68. The court then rejected Moore's ACCA challenge, finding it was foreclosed by *United States v. Smith*, 775 F.3d 1262 (11th Cir. 2014), in which it had "also analyzed and rejected the necessity of a mens rea element in the underlying crime to qualify as a serious drug offense under the ACCA." *Id.* at 468. The Eleventh Circuit affirmed Moore's sentence. *Id.* Moore then petitioned for a writ of certiorari with the Supreme Court, which was denied. (Cr-Doc. 124).

Moore's § 2255 motion raises three claims for relief in reliance on *United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022) ("*Jackson*")—that his prior Florida cocaine-related convictions no longer qualify as "serious drug offenses" under the ACCA and thus he is "actually innocent" of the armed career offender enhancement (Grounds One and Two) and that his attorney was ineffective for failing to raise that argument with this Court (Ground Four). (Doc. 1 at 4–5, 8, 12). He also claims his armed career

offender designation is invalid in light of *Borden v. United States*, 141 S. Ct. 1817 (2021). (*Id.* at 6).

The United States moved to stay the § 2255 proceedings pending the issuance of the Eleventh Circuit's mandate in *Jackson,* and this Court granted the motion. (Docs. 7, 8). After the Eleventh Circuit entered a superseding decision in *United States v. Jackson*, 55 F.4th 846 (11th Cir. 2022) ("*Jackson II"),* the United States moved to reopen this case (Doc. 17), and this Court granted the motion. (Doc. 19). The United States also responded to Moore's § 2255 motion (Doc. 18), conceding that his claims are cognizable under § 2255 and timely filed, but should be denied. Moore then filed two identical motions to supplement his § 2255 motion with a claim based on the Supreme Court's recent decision in *Erlinger v. United States*, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024). (Docs. 21, 22). The United States responded in opposition to Moore's motions. (Doc. 24).

## II. MOTIONS TO SUPPLEMENT

Through two identical motions, Moore seeks to supplement his § 2255 motion with a claim that his ACCA sentencing enhancement is invalid in light of *Erlinger*. (Docs. 21, 22). *Erlinger* held that, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in applying the ACCA, the matter of whether predicate offenses occurred on separate occasions in applying the ACCA is a question of fact that must be determined by a unanimous jury beyond a reasonable doubt. 602 U.S. at 834–35. In his proposed new claim, Moore argues that *Erlinger* establishes that his prison sentence was imposed as

a result of misclassifying him as an armed career criminal in violation of the Constitution and constitutes a fundamental miscarriage of justice.

There is no dispute that *Erlinger*, which was decided after Moore's sentencing and direct appeal, holds that a jury must decide the different-occasions inquiry. *Erlinger*, however, is not retroactive and not applicable to Moore's case. Generally, a newly recognized right applies retroactively on collateral review only in limited circumstances. *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). And, "[n]ew procedural rules do not apply retroactively on federal collateral review." *Edwards v. Vannoy*, 593 U.S. 255, 272 (2021). "[A] court other than the Supreme Court may determine retroactivity under § 2255(f)(3)." *Steiner v. United States*, 940 F.3d 1282, 1289 (11th Cir. 2019) (quoting *Figuereo-Sanchez v. United States*, 678 F.3d 1203, 1207 (11th Cir. 2012)).

To determine whether *Erlinger* applies retroactively, this Court will use the two-part test outlined in *Teague v. Lane*, 489 U.S. 288, 301 (1989). First, the Court must determine whether *Erlinger* announced a new rule. Second, the Court must "determine whether that new rule satisfies an exception to the general prohibition against the retroactive application of new rules on collateral review." *Figuereo-Sanchez*, 678 F.3d at 1208.

The Supreme Court has identified two exceptions to this general prohibition on retroactively applying new rules on collateral review for: (1) new substantive rules and (2) "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Schriro*, 542 U.S. at 351-52. Substantive rules are

"rules forbidding criminal punishment of certain primary conduct" and "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Montgomery v. Louisiana*, 577 U.S. 190, 198 (2016). The "watershed" exception is extraordinarily rare, and the Supreme Court has not recognized a single post-*Teague* rule as a "watershed" exception. *Vannoy*, 593 U.S. at 264.

"The *Teague* inquiry easily leads to the conclusion that *Erlinger* announced a new rule of criminal procedure that is not retroactive." *Ursery v. United States*, No. 3:22-CV-00776, 2024 WL 4652209, at *4 (M.D. Tenn. Nov. 1, 2024). While *Erlinger* announced a new rule because (at the time of the conviction) district courts routinely decided whether a defendant's three qualifying ACCA convictions were committed on different occasions, the new rule does not fall under either of *Teague*'s exceptions. *Erlinger*'s new requirement that only a jury can consider the ACCA's "occasions" inquiry is not a "substantive rule" because it alters only "the manner of determining the defendant's culpability." *Vannoy*, 593 U.S. at 276 (quotations omitted). Such a procedural rule does "not apply retroactively on federal collateral review." *Id.*; *see Schriro*, 542 U.S. at 353 (finding that decisions requiring that a jury make a factual determination "are prototypical procedural rules"); *Erlinger*, 602 U.S. 821, 859 n.3 (2024) (Kavanaugh, J., dissenting) ("For any case that is already final, the *Teague* rule will presumably bar the defendant from raising [*Erlinger*'s] new rule in collateral proceedings.").

Next, there is no sign that *Erlinger* is a watershed rule of criminal procedure. Only one "watershed" exception has ever been identified by the Supreme Court: the landmark decision in *Gideon v. Wainwright*, 372 U.S. 335, 344–345 (1963). *Vannoy*, 593 U.S. at 267. Unlike *Gideon*, *Erlinger* is not a landmark decision that has altered "our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Id.* (quoting *Whorton v. Bockting*, 549 U.S. 406, 417-18 (2007)). Indeed, the Supreme Court has explicitly told future litigants that,

> If landmark and historic criminal procedure decisions—including *Mapp*, *Miranda*, *Duncan*, *Crawford*, *Batson*, and now *Ramos*—do not apply retroactively on federal collateral review, how can any additional new rules of criminal procedure apply retroactively on federal collateral review? At this point, some 32 years after *Teague*, we think the only candid answer is that none can—that is, *no new rules of criminal procedure can satisfy the watershed exception*. We cannot responsibly continue to suggest otherwise to litigants and courts.

*Id.* at 271 (emphasis added). Therefore, because the procedural rule announced in *Erlinger* is not retroactive on collateral review, Moore's motions for leave to supplement his § 2255 Motion to add a claim based on *Erlinger* are denied.

## III. SECTION 2255 MOTION

### *Grounds One and Two*

In Grounds One and Two, Moore claims that, in light of *Jackson,* his prior Florida cocaine-related convictions no longer qualify as "serious drug offenses" under the ACCA and thus he is "actually innocent" of his armed career offender status. (Doc. 1 at 4 –5). His claims lack merit.

Under the ACCA, a defendant convicted of a § 922(g) offense faces a 15-year minimum sentence and a maximum term of life imprisonment if he possesses a firearm

or ammunition following three felony convictions for a "violent felony," a "serious drug offense," or a combination of both, "committed on occasions different from one another." *See* 18 U.S.C. § 924(e)(1). As relevant here, the term "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802) ("CSA"), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). By its terms, therefore, the ACCA's definition of a serious drug offense is tied to the federal drug schedules in the CSA. *See Jackson II*, 55 F.4th at 849. But, because the CSA "authorizes the Attorney General to remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule[,]" the drug schedules are subject to revision. *Id.* at 851 (quotation omitted).

In *Jackson*, the Eleventh Circuit considered which version of the drug schedule ACCA's definition of a serious drug offense incorporates: the one in effect when the defendant committed his firearm offense, or the one in effect when the defendant was convicted of his prior state drug offense. 55 F.4th at 851. Jackson, who had committed his firearm offense in 2017, had prior cocaine-related convictions under Fla. Stat. § 893.13(1) from 1998 and 2004. *Id.* at 850–51. When he committed those predicate Florida drug offenses, the federal and Florida drug schedules had included ioflupane, a cocaine derivative, as a controlled substance. *Id.* at 851. But in 2015, ioflupane was removed from the federal drug schedule due to its potential use in diagnosing

Parkinson's disease. *Id.* According to Jackson, that change rendered his prior Florida cocaine-related convictions non-qualifying under ACCA, because they included potential conduct—an offense involving ioflupane—that under the revised CSA was no longer criminal. *Id.*

While the panel in *Jackson* at first agreed with Jackson, *see* 36 F.4th at 1303–1306, it subsequently held that, under the Supreme Court's reasoning in *McNeill v. United States*, 563 U.S. 816, 819–20 (2011), the ACCA's definition of a previous conviction for a "serious drug offense" is "backward-looking" and incorporates the version of the controlled-substances list in effect when the defendant was convicted of his prior state drug offense. *See Jackson II*, 55 F.4th at 855–58 ("the ACCA is concerned with convictions that have already occurred, [so w]hether the prior conviction was for an offense 'involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance' can only be answered by reference to the law under which the defendant was convicted") (quoting *McNeill*, 563 U.S. at 820)). Otherwise, prior state drug convictions would be "erased or disappear for ACCA purposes when . . . the federal schedules at the time [the defendant] committed his firearm offense have omitted the substances that were federally controlled at the time of the prior state conviction." *Id.* at 858 (brackets and quotation omitted). Moreover, "the elements of and penalties for an offense underlying a previous conviction are set—that is, immutable—at the time of that conviction." *Id.* And, because a federal drug offense is defined to incorporate the version of the CSA (and thus the federal controlled-substances schedules) in effect at the time the defendant's

10

federal drug conviction occurred, the ACCA's use of the CSA to define prior federal and state "serious drug offense[s]" also incorporates the federal drug schedules in effect at the time of the prior conviction. *Id.* at 858–59.[5]

Under the holding in *Jackson II*, the only Florida cocaine-related drug convictions that may no longer be considered serious drug offenses under ACCA are those for which a defendant was convicted after September 11, 2015, when the federal drug schedule was changed to eliminate ioflupane, *see Schedules of Controlled Substances: Removal of [123 I] Ioflupane from Schedule II of the Controlled Substances Act*, 80 Fed. Reg. 54715, 54715 (Sept. 11, 2015), and before July 1, 2017, when the Florida drug schedule was also amended, *see* 2017 Fla. Sess. Law Serv. Ch. 2017-110 (C.S.H.B. 505); *see also Jackson*, 36 F.4th at 1301–03 (providing history of schedule changes for ioflupane).

Moore qualified for his enhanced sentence based on his two 2008 Florida convictions for possession of cocaine with intent to sell or deliver,[6] a 2006 Florida conviction for sale of rock cocaine, and a 2005 Florida conviction for sale of cocaine. At the time of these pre-2015 Florida cocaine convictions, both the Florida and federal controlled-substances schedules included ioflupane. *See Jackson II*, 55 F.4th at 851

---

[5]  The Supreme Court has since affirmed the decision in *Jackson II* in *Brown v. United States*, 144 S. Ct. 1195, 1201 (2024).

[6]  It is of no relevance that Moore may have been sentenced for different offenses on the same day or sentenced to concurrent terms of imprisonment. *See United States v. Wilks*, 464 F.3d 1240, 1244 (11th Cir. 2006) ("It does not matter for § 924(e) purposes that the legal consequences of a defendant's separate criminal acts were imposed upon him on the same day. Nor does it matter that the legal consequences were sentences to be served concurrently instead of consecutively." (citations omitted)).

nn.3, 4. Therefore, *Jackson* does not afford Moore relief, and Grounds One and Two are denied as meritless.

### *Ground Four*

In Ground Four, Moore raises the claim from Grounds One and Two in the context of ineffective assistance of counsel. He claims that his former counsel was "ineffective for not challenging this Court on [his] Florida state prior § 893.13(a)(1) as an invalid state prior." (Doc. 1 at 8). And he asserts that in light of *Jackson*, his counsel was ineffective and prejudiced [him] by not challenging the fact that[ his] 1997 Florida State § 893.13(a)(1) cocaine-related Controlled Substance Act is not a serious drug offense according to *Jackson* . . . because in 1997 it was too broad a controlled substance element offense." (*Id.*).[7] Moore's claim has no merit.

A petitioner must meet a stringent, two-prong test to succeed on an ineffective assistance of counsel claim. First, the petitioner must show that counsel committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the petitioner must prove resulting prejudice. *Id. Strickland* sets a "high bar" for ineffective assistance claims; surmounting it is never easy." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks and citation omitted). If the petitioner fails to establish either of the *Strickland* prongs, his claim fails. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

---

[7]    It is unclear why Moore refers to 1997 in his claims. In any event, his ACCA enhancement was supported by convictions from 2005, 2006, and 2008.

When evaluating performance, this Court must apply a "strong presumption" that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action his counsel did take." *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). The standard that the petitioner must meet is both "rigorous" and "highly demanding," and requires showing "gross incompetence" on counsel's part. *Kimmelman v. Morrison*, 477 U.S. 365, 381–82 (1986). A petitioner establishes prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Here, Moore's former counsel did challenge the use of the Florida cocaine-related convictions to support Moore's ACCA enhancement. And counsel cannot be deemed to have performed deficiently by failing to anticipate the issue raised in *Jackson,* even if the claim was reasonably available when counsel failed to raise it. *See Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1334 (11th Cir. 2016) (collecting cases). Based on the ultimate holding in *Jackson II* (and *Brown*), Moore was not prejudiced because he remains eligible for his enhanced sentence. *See Jackson II*, 55 F.4th at 851 nn.3, 4. Moore, therefore, cannot establish a reasonable probability that the result of the proceeding would have been different if counsel had objected to his enhanced sentence on this basis. *See Strickl*and, 466 U.S. at 694; *see also Freeman v. Atty. Gen.*, 536

F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim." (citation omitted)).[8] Therefore, Ground Four is denied as meritless.

### Ground Three

As his third ground for relief, Moore claims that his "armed career offender status is invalid based on *Borden v. United States*, 141 S. Ct. 1817 (2021), arguing that "based on mens rea of the illicit nature of the substance and the fact that § 893.13(a)(1) in 1997 was too broad an element offense of conviction in 2015 to have careered the movant based on *Jackson*." (Doc. 1 at 6). This claim is also without merit.

In *Borden*, the Supreme Court held that a criminal offense that requires a mens rea of only recklessness is not a violent felony under the ACCA. 141 S. Ct. at 1822. The Court specifically addressed the meaning of "use" of force and determined that the ACCA's definition of "violent felony" as an offense requiring the "use of physical

---

[8]   In the supplement to his § 2255 motion, Moore also claims that his former counsel "was also ineffective and prejudiced [him] when he allowed the Government to violate [his] *Brady v. Maryland*, 373 U.S. 83 (1963), rights." (Doc. 4 at 3). He asserts the United States knew that [he] was not an armed career offender, because it was the Attorney General under 21 U.S.C. § 811(a) who requested, regarding 21 C.F.R. § 1308.12(b)(4), that ioflupane be removed from the Schedule II Controlled Substance Act in September 2015." *Id.* Moore contends that "information . . . regarding ioflupane" and the "Government's request in September 2015 to remove ioflupane from the SchedControlled Substance Act" constitute "*Brady v. Maryland* material." *Id.* Moore's claim lacks merit for the reasons already discussed and he cites no legal authority for his proposition that such a "request" constitutes material evidence favorable to him that required disclosure, especially given that ioflupane was removed from the federal schedule before he committed his offense. *See Wright v. Hopper*, 169 F.3d 695, 702 (11th Cir. 1999) (no *Brady* violation where material was publicly available); *United States v. Barroso*, 719 F. App'x 936, 940–41 (11th Cir. 2018) (same). In any event, because Moore sustained his convictions for the predicate offenses before 2015, his claim is meritless.

force against the person of another" does not include offenses criminalizing reckless conduct. *Id.* at 1823–25.[9]

*Borden*'s holding is, however, limited to the ACCA's definition of "violent felony" and does not address its definition of "serious drug offense," which includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the [CSA]), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Moore's ACCA enhancement was supported by four qualifying serious drug offenses, not violent felonies. Therefore, *Borden* is not applicable here.

Finally, as to Moore's challenge to the "mens rea of the illicit nature of the substance," the Eleventh Circuit has already rejected his claim on direct appeal. *See Moore*, 814 F. App'x at 468. Thus, his arguments are procedurally barred in this proceeding. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255." (quotation and brackets omitted)). In any event, as the Eleventh Circuit observed, the argument is foreclosed by *Smith*, in which the court held that the definition of a "serious drug offense" does not "require[]

---

[9]  This holding merely ratified the Eleventh Circuit's prior holdings that a mens rea of either purpose or knowledge—a culpable mental state of more than recklessness—is required for a conviction to qualify as a violent felony. *See Borden*, 141 S. Ct. at 1823 nn.1, 2 (noting that, unlike some other Circuits, the Eleventh Circuit had held that "only a statute confined to purposeful or knowing conduct" constitutes a violent felony); *United States v. Carter*, 7 F.4th 1039, 1045 (11th Cir. 2021) (recognizing that *Borden* "affirmed" Eleventh Circuit precedent).

that a predicate state offense includes an element of mens rea with respect to the illicit nature of the controlled substance." *Moore*, 814 F. App'x at 468 (citing *Smith*, 775 F.3d at 1268). Thus, Ground Three is denied as meritless.

## IV.    CONCLUSION

1.  Moore's motions to supplement his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Docs. 21, 22) are **DENIED**.

2.  Moore's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 1) is **DENIED** on its merits. The Clerk is directed to enter judgment against Moore, to close this case, and to enter a copy of this order in the criminal action.

3.  Moore is not entitled to a certificate of appealability. To obtain a certificate of appealability, the petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linehan*, 279 F.3d 926, 935 (11th Cir. 2001). Because Moore fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, he is not entitled to a certificate of appealability or to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida on November 18, 2025.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

*Copies to:*
*Pro se* Petitioner

Counsel of Record